**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COLBY RANDALL,<br>Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | COMPLAINT AND DEMAND FOR JURY TRIAL |
| LANCASTER COUNTY;<br>JOHN DOE CORRECTIONAL OFFICERS 1 THROUGH 10; and<br>JOHN/JANE DOE MEDICAL PERSONNEL 11 THROUGH 20, | : | |
| Defendants. | : | |

**COMPLAINT**

Plaintiff Colby Randall, by and through undersigned counsel, brings this civil rights action against Defendants Lancaster County, John Doe Correctional Officers 1 through 10, and John/Jane Doe Medical Personnel 11 through 20, and in support thereof avers as follows:

## I. PRELIMINARY STATEMENT

1. This is a civil rights action brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured to Plaintiff Colby Randall by the Eighth and Fourteenth Amendments to the United States Constitution.

2. On or about September 20, 2025, Mr. Randall was in the custody of Lancaster County at the Lancaster County Prison. He had no prior history of seizure disorder. He had not ingested any controlled substance. Without warning, he suffered a seizure while in his cell and in the custody, care, and exclusive control of Defendants.

3. Mr. Randall next regained awareness in a bed at Lancaster General Hospital. His collarbone was fractured. Handcuffs remained clamped on his wrists so tightly that they had been

left in place beneath the bandages that hospital staff had applied to his arms, cutting into the skin and compressing the nerves and soft tissue of both wrists.

4. Mr. Randall required open surgery to repair his fractured clavicle. Nearly a year later, his hands still do not function to full capacity.

5. A person who enters a jail cell healthy, suffers a medical emergency, and emerges with a fractured collarbone and handcuff-induced nerve injury did not do so as a result of any lawful exercise of custodial authority. Mr. Randall was unconscious and helpless. Whatever happened to his body during that period happened at the hands of, or with the knowing acquiescence of, the individuals charged with keeping him safe.

6. Mr. Randall seeks compensatory and punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as this Court deems just.

## II. JURISDICTION AND VENUE

7. This action arises under the Constitution and laws of the United States, in particular the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (a)(4) (civil rights).

9. This Court is authorized to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant Lancaster County is situated in this District, because all individual Defendants are believed to reside in this District, and because all of the events and omissions giving rise to

Plaintiff's claims occurred in Lancaster County, Pennsylvania, which lies within the Eastern District of Pennsylvania. See 28 U.S.C. § 118(a).

## III. PARTIES

11. Plaintiff Colby Randall is an adult individual and a citizen of the Commonwealth of Pennsylvania. At all times relevant to this Complaint, Mr. Randall was confined at the Lancaster County Prison and was a person in the custody of Lancaster County.

12. Defendant Lancaster County ("Lancaster County" or "the County") is a county of the Commonwealth of Pennsylvania organized and existing under the laws of Pennsylvania, with offices at 150 North Queen Street, Lancaster, Pennsylvania 17603. Lancaster County owns, operates, funds, staffs, supervises, and is legally responsible for the Lancaster County Prison, including its correctional operations and the provision of medical care to persons confined there. Lancaster County is a "person" subject to suit under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

13. Lancaster County acts through its Board of Commissioners, its Prison Board, the Warden of the Lancaster County Prison, and such other final policymakers as Pennsylvania law and County practice designate. The identification of the specific final policymaker or policymakers responsible for each policy, practice, custom, and training decision challenged herein is a matter peculiarly within Defendants' knowledge and will be established through discovery.

14. Defendants John Doe Correctional Officers 1 through 10 are correctional officers, supervisors, shift commanders, and other non-medical staff employed by Lancaster County who, on or about September 20, 2025, were assigned to the housing unit in which Mr. Randall was confined, responded or failed to respond to his medical emergency, applied or maintained restraints

upon him, physically handled or moved him, and/or supervised those who took these actions. Each is sued in his or her individual capacity.

15. Defendants John/Jane Doe Medical Personnel 11 through 20 are physicians, physician assistants, nurses, emergency medical technicians, and other medical or mental health staff who, on or about September 20, 2025, were responsible for providing or supervising medical care to persons confined at the Lancaster County Prison, and who evaluated, treated, failed to evaluate, failed to treat, or failed to timely refer Mr. Randall in connection with his seizure and resulting injuries. Each is sued in his or her individual capacity. Upon information and belief, some or all of these Defendants were employed by a private entity under contract with Lancaster County to provide correctional health care, in which event that entity is also subject to suit under § 1983 and will be named by amendment upon its identification.

16. The true names and identities of the Doe Defendants are not presently known to Plaintiff. Mr. Randall was unconscious or otherwise incapacitated throughout the period in which he was injured, and the records identifying the individuals who responded to, restrained, and transported him are in the exclusive possession, custody, and control of Defendants. Plaintiff will amend this Complaint to substitute the true names of the Doe Defendants promptly upon learning them through discovery.

17. At all times relevant to this Complaint, each individual Defendant acted under color of the statutes, ordinances, regulations, customs, and usages of the Commonwealth of Pennsylvania and Lancaster County, and within the course and scope of his or her employment.

## IV. FACTUAL ALLEGATIONS

### A. Mr. Randall Enters Custody in Good Health

18. On or about September 20, 2025, Mr. Randall was confined at the Lancaster County Prison, a facility owned and operated by Lancaster County.

19. Mr. Randall had no prior history of epilepsy, seizure disorder, or any other condition associated with convulsive episodes. He had never before suffered a seizure.

20. Mr. Randall's seizure was not caused by the ingestion of alcohol or any controlled substance, and was not the product of withdrawal from any such substance.

21. Mr. Randall was not, prior to the events described below, suffering from any fracture, dislocation, or other injury to his clavicle, shoulder, wrists, or hands. He had full and normal use of both hands.

### B. The Seizure

22. On or about September 20, 2025, while confined at the Lancaster County Prison, Mr. Randall suffered a seizure.

23. A seizure is an obvious and objectively serious medical emergency. A layperson observing a person convulsing, unresponsive, or postictal would immediately recognize the need for prompt medical attention.

24. A person actively seizing cannot protect himself. He cannot break a fall, cannot control the movement of his limbs, cannot follow commands, cannot consent, and cannot resist. He is, in the most literal sense, at the mercy of those around him.

25. Correctional officers and correctional medical staff are trained, or should be trained, that the appropriate response to a seizure is to protect the person's head, clear the area of hazards,

place the person on his side once the convulsion subsides, refrain from restraining or holding down the person's limbs, and summon emergency medical assistance.

26. Upon information and belief, one or more of the Doe Defendants observed, was informed of, or was otherwise aware of Mr. Randall's seizure as it occurred or immediately thereafter.

27. Upon information and belief, and contrary to the standard of care and to Defendants' own training and policies, one or more of the Doe Defendants responded to Mr. Randall's seizure by physically restraining, holding down, striking, dragging, or otherwise forcibly handling Mr. Randall's body while he was convulsing, unconscious, or otherwise incapable of resistance.

28. In the alternative, and upon information and belief, one or more of the Doe Defendants failed to respond to Mr. Randall's seizure at all for a materially prolonged period, leaving him to convulse unattended and unprotected in circumstances in which serious injury was a foreseeable result.

29. Mr. Randall does not presently know which of these accounts is accurate, because he was unconscious and because Defendants control the video recordings, incident reports, use-of-force reports, staffing assignments, and medical records that would reveal what occurred. He pleads both in the alternative as permitted by Federal Rule of Civil Procedure 8(d)(2) and (d)(3).

## C. The Handcuffs

30. At some point during or after the seizure, one or more of the Doe Defendants applied metal handcuffs to Mr. Randall's wrists.

31. Mr. Randall was unconscious or otherwise incapacitated. He posed no threat to himself, to staff, or to any other person. He was not attempting to flee. He was not resisting. He was not,

and could not have been, engaged in any conduct warranting the application of restraints, let alone their application at a punishing degree of tightness.

32. The handcuffs were applied and thereafter maintained at a degree of tightness that was objectively unreasonable, that served no legitimate penological or medical purpose, and that was certain to cause injury.

33. Upon information and belief, one or more of the Doe Defendants had the opportunity to loosen, double-lock, check, or remove the handcuffs and failed to do so.

34. Mr. Randall was transported to Lancaster General Hospital, where hospital staff applied bandages to his arms and wrists. Upon information and belief, the bandages were applied over and around the handcuffs, which Defendants declined to remove.

35. When Mr. Randall regained awareness at Lancaster General Hospital, the handcuffs were still on his wrists, underneath the bandages, biting into his flesh.

36. Upon information and belief, one or more of the Doe Defendants was physically present at Lancaster General Hospital, observed the condition of Mr. Randall's wrists, heard or could have heard his complaints of pain, and nonetheless left the handcuffs in place at the same excessive tightness for a materially prolonged period.

37. Upon information and belief, one or more of the Doe Defendants, and one or more of the John/Jane Doe Medical Personnel, were aware that the handcuffs were compressing Mr. Randall's wrists beneath the bandages and failed to take the obvious and costless step of loosening or removing them.

**D. Mr. Randall's Injuries**

38. Mr. Randall regained awareness at Lancaster General Hospital, where he was diagnosed with a fractured clavicle.

39. A fractured clavicle is not a self-inflicted injury of a person having a seizure on a cell floor in the ordinary course. It is the product of substantial force applied to the shoulder girdle.

40. Mr. Randall underwent surgery to repair his fractured collarbone. The surgery involved the implantation of hardware and required a prolonged and painful course of recovery and physical therapy.

41. As a direct and proximate result of the excessively tight handcuffs and the prolonged period during which they were maintained, Mr. Randall sustained injury to the nerves, tendons, and soft tissues of both wrists and hands.

42. Nearly one year later, Mr. Randall's hands still do not function to full capacity. He suffers from persistent numbness, tingling, weakness, reduced grip strength, and loss of fine motor control. These deficits impair his ability to perform activities of daily living and to work.

43. Mr. Randall has suffered and continues to suffer physical pain, permanent physical impairment, scarring, emotional distress, humiliation, anxiety, loss of life's pleasures, medical expenses, and lost earning capacity.

**E. Defendants' Knowledge and State of Mind**

44. Each of the Doe Defendants who used force against Mr. Randall knew that he was unconscious, incapacitated, and incapable of resistance, and applied force anyway, not in a good-faith effort to maintain or restore discipline, but maliciously, sadistically, or with reckless disregard for the certainty of serious injury.

45. Each of the Doe Defendants who observed or was aware of Mr. Randall's seizure knew of a substantial risk of serious harm to him and either disregarded that risk or responded in a manner that was objectively unreasonable in light of the risk.

46. Each of the Doe Defendants who applied or maintained the handcuffs knew or was obviously on notice that restraints of that tightness, applied to an unconscious person and left in place beneath hospital bandages for a prolonged period, would cause nerve and soft-tissue injury.

47. Each of the Doe Defendants who was present and observed another Defendant use excessive force against Mr. Randall, or observed the excessively tight restraints, had a realistic and reasonable opportunity to intervene to stop or mitigate that constitutional violation and failed to do so.

**<u>F. Lancaster County's Policies, Customs, and Failures of Training and Supervision</u>**

48. Upon information and belief, at all relevant times, Lancaster County maintained one or more of the following policies, practices, or customs, each of which was a moving force behind the violation of Mr. Randall's constitutional rights:

49. A policy, practice, or custom of responding to inmate medical emergencies, including seizures, with force and restraint rather than with medical care.

50. A policy, practice, or custom of applying mechanical restraints to unconscious, incapacitated, or medically compromised inmates without any individualized assessment of necessity, and of maintaining those restraints without periodic checks for circulation, tightness, or injury.

51. A policy, practice, or custom of maintaining mechanical restraints on hospitalized inmates for prolonged periods without regard to medical necessity, medical contraindication, or the inmate's condition, and of overriding or disregarding hospital staff's treatment of the restrained limbs.

52. A failure to promulgate any policy, or any adequate policy, governing the recognition of and response to seizures and other medical emergencies at the Lancaster County Prison.

53. A failure to train correctional officers in the recognition of and appropriate response to seizures, including the specific instruction not to restrain or hold down a person who is actively seizing.

54. A failure to train correctional officers in the proper application, double-locking, tightness-checking, and timely removal of mechanical restraints, and in the recognition of the signs of restraint-related nerve and vascular injury.

55. A failure to supervise and to discipline correctional officers and medical staff who use excessive force against, or deny or delay medical care to, persons in custody.

56. A custom of failing to meaningfully investigate uses of force and in-custody injuries, of accepting officers' accounts uncritically, and of failing to preserve or to document evidence of in-custody injury, which custom operates as a de facto ratification of unconstitutional conduct and emboldens officers to act with impunity.

57. A policy or custom of understaffing the Lancaster County Prison, and of failing to ensure adequate medical coverage, such that medical emergencies are foreseeably met by correctional staff untrained to handle them.

58. The need for training and supervision in each of the above areas was obvious. Seizures and other medical emergencies are a recurring and entirely predictable feature of jail operations. The application of mechanical restraints is among the most routine tasks a correctional officer performs. The consequences of failing to train officers in these areas, serious injury to helpless people in custody, are equally predictable. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

59. Upon information and belief, prior incidents, grievances, litigation, medical records, incident reports, and internal audits placed Lancaster County's policymakers on actual or constructive notice of the deficiencies described above, and those policymakers were deliberately

indifferent to the known or obvious consequences of failing to correct them. The particulars of that notice are within Defendants' exclusive control and are the proper subject of discovery.

60. Lancaster County's policies, practices, customs, and failures of training and supervision were the moving force behind, and directly and proximately caused, the violation of Mr. Randall's constitutional rights and the injuries he sustained.

## VI. CAUSES OF ACTION

### COUNT I

**42 U.S.C. § 1983: Fourteenth and Eighth Amendments**
**Deliberate Indifference to Serious Medical Needs**
**Plaintiff v. John Doe Correctional Officers 1 through 10**

61. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

62. At all relevant times, Mr. Randall was in the custody of Lancaster County. If he was a pretrial detainee, his right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment; if he was a convicted and sentenced prisoner, that right arises under the Cruel and Unusual Punishments Clause of the Eighth Amendment. Plaintiff pleads both in the alternative pursuant to Federal Rule of Civil Procedure 8(d). The protections afforded a pretrial detainee are at least as great as those afforded a convicted prisoner, and the Third Circuit applies the same deliberate indifference standard to both.

63. An unwitnessed or untreated seizure, a fractured clavicle, and circumferential compression injuries to both wrists are each an objectively serious medical need, one that has been diagnosed by a physician as requiring treatment and one so obvious that a lay person would readily recognize the necessity for a doctor's attention.

64. The John Doe Correctional Officer Defendants knew of and disregarded an excessive risk to Mr. Randall's health and safety, and/or acted objectively unreasonably in light of that risk, by failing to summon timely medical assistance, by delaying necessary medical treatment, by responding to a medical emergency with force rather than care, and by failing to report or to disclose the mechanism of Mr. Randall's injuries to treating providers.

65. These Defendants' conduct was intentional, knowing, willful, wanton, malicious, and/or in reckless disregard of Mr. Randall's constitutional rights.

66. As a direct and proximate result of these Defendants' conduct, Mr. Randall suffered the injuries and damages described above.

WHEREFORE, Plaintiff Colby Randall demands judgment in his favor and against John Doe Correctional Officers 1 through 10, jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT II

### 42 U.S.C. § 1983: Fourteenth and Eighth Amendments
### Deliberate Indifference to Serious Medical Needs
### Plaintiff v. John/Jane Doe Medical Personnel 11 through 20

67. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

68. The John/Jane Doe Medical Personnel Defendants were responsible for the medical care of persons confined at the Lancaster County Prison and acted under color of state law in discharging that responsibility.

69. These Defendants knew of and disregarded an excessive risk to Mr. Randall's health and safety, and/or acted objectively unreasonably in light of that risk, by failing to evaluate or

timely evaluate him following a first-time seizure of unknown etiology; by failing to recognize, diagnose, or timely refer for treatment his fractured clavicle; by failing to assess the condition of his restrained wrists; by acquiescing in the maintenance of excessively tight restraints that they knew or should have known were causing compression injury; and by failing to advocate for or order the removal of those restraints.

70. These Defendants persisted in a course of treatment, and in a course of inaction, in the face of obvious and known risks of harm, and did so for reasons unrelated to the exercise of medical judgment.

71. These Defendants' conduct was intentional, knowing, willful, wanton, malicious, and/or in reckless disregard of Mr. Randall's constitutional rights.

72. As a direct and proximate result of these Defendants' conduct, Mr. Randall suffered the injuries and damages described above.

WHEREFORE, Plaintiff Colby Randall demands judgment in his favor and against John/Jane Doe Medical Personnel 11 through 20, jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT III

**42 U.S.C. § 1983: Fourteenth and Eighth Amendments**
**Excessive Force and Unlawful Restraint**
**Plaintiff v. All Doe Defendants**

73. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

74. If Mr. Randall was a pretrial detainee, the force used against him violated the Due Process Clause of the Fourteenth Amendment because it was objectively unreasonable, a standard

that does not require proof of the officer's subjective intent to punish. If he was a convicted prisoner, that force violated the Eighth Amendment because it was not applied in a good-faith effort to maintain or restore discipline but maliciously and sadistically to cause harm. Plaintiff pleads both in the alternative.

75. Under either standard, the force used against Mr. Randall was unconstitutional. He was unconscious, convulsing, or postictal. He posed no threat. He offered no resistance. There was no disturbance to quell and no order to restore. Any force applied to a person in that condition, and certainly force sufficient to fracture a collarbone, was gratuitous.

76. The application and maintenance of handcuffs at a degree of tightness sufficient to compress the nerves and soft tissue of both wrists, upon a person who was unconscious and incapable of resistance, and their maintenance beneath hospital bandages for a prolonged period thereafter, was likewise objectively unreasonable and served no legitimate governmental purpose.

77. The severity of the injuries Mr. Randall sustained, a clavicle fracture requiring surgery and permanent bilateral hand dysfunction, reflects the severity and gratuitousness of the force used.

78. These Defendants' conduct was intentional, knowing, willful, wanton, malicious, and/or in reckless disregard of Mr. Randall's constitutional rights.

79. As a direct and proximate result of these Defendants' conduct, Mr. Randall suffered the injuries and damages described above.

WHEREFORE, Plaintiff Colby Randall demands judgment in his favor and against John Doe Correctional Officers 1 through 10 and John/Jane Doe Medical Personnel 11 through 20, jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT IV

**42 U.S.C. § 1983: Fourteenth and Eighth Amendments**
**Failure to Intervene**
**Plaintiff v. All Doe Defendants**

80. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

81. A corrections officer who observes a fellow officer violate a person's constitutional rights, and who has a realistic and reasonable opportunity to intervene, has an affirmative duty to do so, and is liable under § 1983 for failing to act.

82. One or more of the Doe Defendants observed, or was in a position to observe, the use of excessive force against Mr. Randall, the application and maintenance of excessively tight restraints upon him, and the denial and delay of medical care to him.

83. Each such Defendant had a realistic and reasonable opportunity to intervene to prevent or to stop those violations, including by directing that force cease, by loosening or removing the handcuffs, by summoning medical assistance, or by reporting what he or she had seen. Each failed to do so.

84. These Defendants' failure to intervene was intentional, knowing, willful, wanton, and/or in reckless disregard of Mr. Randall's constitutional rights, and directly and proximately caused the injuries and damages described above.

WHEREFORE, Plaintiff Colby Randall demands judgment in his favor and against John Doe Correctional Officers 1 through 10 and John/Jane Doe Medical Personnel 11 through 20, jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

**<u>COUNT V</u>**

**42 U.S.C. § 1983: Municipal Liability**
***Monell v. Department of Social Services*, 436 U.S. 658 (1978)**
**Plaintiff v. Lancaster County**

85. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

86. A municipality is liable under § 1983 where the execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the constitutional injury.

87. Municipal liability attaches where (i) an appropriately authorized decisionmaker issues an official proclamation, policy, or edict; (ii) a course of conduct, though not authorized by law, is so permanent and well settled as to virtually constitute law; or (iii) a policymaker fails to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

88. Lancaster County is liable under each of these theories. The policies, practices, customs, and failures of training and supervision set forth in Section IV.F above were the moving force behind the violation of Mr. Randall’s constitutional rights.

89. The County’s failure to train and to supervise its correctional and medical staff in the recognition of and response to seizures, and in the proper application and monitoring of mechanical restraints, amounted to deliberate indifference to the rights of the persons in its custody. The need for such training was so obvious, and the inadequacy of the existing training so likely to result in the violation of constitutional rights, that the County’s policymakers can reasonably be said to have been deliberately indifferent to that need.

90. The County's failure to promulgate any adequate policy governing the medical response to seizures, and governing the use of restraints on unconscious and hospitalized detainees, is itself a policy for which the County is liable.

91. The County's custom of failing to investigate, document, and discipline uses of force and in-custody injuries constitutes acquiescence in and ratification of the unconstitutional conduct of its employees.

92. As a direct and proximate result of Lancaster County's policies, customs, and failures of training and supervision, Mr. Randall suffered the injuries and damages described above.

WHEREFORE, Plaintiff Colby Randall demands judgment in his favor and against Defendant Lancaster County for compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## VII. DAMAGES

93. As a direct and proximate result of Defendants' conduct, Mr. Randall has suffered and will continue to suffer: severe physical pain; a fractured clavicle requiring surgical repair; permanent bilateral nerve and soft-tissue injury to his wrists and hands; permanent loss of grip strength, sensation, and fine motor function; scarring and disfigurement; past and future medical, surgical, rehabilitative, and pharmaceutical expenses; past and future lost earnings and impairment of earning capacity; emotional distress, anxiety, humiliation, and mental anguish; and loss of life's pleasures.

94. The conduct of the individual Defendants was motivated by evil motive or intent, or involved reckless or callous indifference to Mr. Randall's federally protected rights, warranting an award of punitive damages against them in their individual capacities.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Colby Randall respectfully requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against all Defendants on all Counts;

b. Award compensatory damages against all Defendants, jointly and severally, in an amount in excess of the arbitration limits of this Court and to be determined at trial;

c. Award punitive damages against each individual Defendant in his or her individual capacity in an amount sufficient to punish and to deter;

d. Award reasonable attorneys' fees, expert fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 1988(b);

e. Award pre-judgment and post-judgment interest as permitted by law;

f. Enter such declaratory and injunctive relief as may be appropriate to remedy the policies, customs, and training deficiencies described herein; and

g. Grant such other and further relief as this Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Colby Randall hereby demands a trial by jury on all issues so triable.

August 26, 2026
DATE

Respectfully submitted,

*/s/ Laura Zipin, Esq.*
LAURA ZIPIN, ESQ.
Pa. ID No. 324914
zipin@levinzeiger.com

*/s/ Brian J. Zeiger, Esq.*
BRIAN J. ZEIGER, ESQ.
Pa. ID No. 87063

zeiger@levinzeiger.com

Levin & Zeiger, LLP
Two Penn Center
1500 JFK Blvd, Suite 620
Philadelphia, PA 19102
(215) 546-0340